CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
11/15/2018
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> JUAN CORTEZ, <br><br> *Defendant.* | CASE NO. 6:18-cr-22 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

This matter is before the Court upon Defendant Juan Cortez's motion to dismiss the indictment. (Dkt. 25). The indictment contains one count, charging Cortez with illegally reentering the United States in violation of 8 U.S.C. § 1326. (Dkt. 15). Cortez argues that the indictment should be dismissed because the notice to appear issued to him failed to specify the time and date of the removal proceedings against him, as he contends is required by 8 U.S.C. § 1229(a)(1) and *Pereira v. Sessions*, 138 S.Ct. 2105 (2018). Cortez advances two specific attacks on the indictment. First, Cortez argues that without a valid notice to appear, subject matter jurisdiction never vested in the immigration court, rendering that court's deportation order a legal nullity. Second, Cortez launches a collateral attack against his deportation order under 8 U.S.C. § 1326(d), arguing that his initial deportation proceedings lacked fundamental fairness.

The Court declines to dismiss the indictment on jurisdictional grounds. Moreover, Cortez's collateral attack on the underlying deportation order fails because, although the initial notice to appear lacked the time and date of the removal proceedings, Cortez attended and participated in his deportation hearing via video conference. Cortez therefore cannot make the necessary showing under § 1326(d) that his deportation proceedings were fundamentally unfair. Accordingly, the motion to dismiss the indictment will be denied.

## I. FACTS & KEY PRECEDENT

### A. Factual Background

On October 25, 2018, Juan Cortez was indicted on one count of illegal reentry into the United States in violation of 8 U.S.C. § 1326. (Dkt. 15). Cortez, allegedly a native of Mexico, was served in person with a notice to appear on February 27, 2011. (Dkt. 25-2). This notice to appear ordered Cortez to appear on "a date to be set" and "at a time to be set" to "show why [he] should not be removed from the United States." (*Id.*). The notice nowhere specified the time or date when Cortez should appear. On March 17, 2011, Cortez appeared via video conference at a removal hearing, at which he was ordered deported. (Dkt. 25-1). The immigration court's removal order indicates that Cortez waived his right to appeal the order. (*Id.*). The indictment states that Cortez was removed from the United States on or about April 22, 2011, and was later found in the United States on or about September 19, 2018. (Dkt. 15). The illegal reentry charge at issue followed.

### B. *Pereira v. Sessions* (2018)

In *Pereira v. Sessions*, 138 S.Ct. 2105 (2018), the Supreme Court considered whether "notices to appear" in deportation proceedings that do not specify the time and place of removal proceedings against a noncitizen qualify as "notices to appear" under 8 U.S.C. § 1229(a)(1) for purposes of the "stop-time rule" under 8 U.S.C. § 1229b(d).[1] The Court held that such notices to appear are not true "notices to appear" as defined by § 1229(a)(1). *Pereira*, 138 S.Ct. at 2113–14. The Court's holding rested primarily on the plain text of § 1229(a)(1), which requires that a

---

[1] Under § 1229b(d)—a statutory section not at issue here but important to understanding *Pereira*'s holding—the Attorney General can cancel removal of non-permanent residents who have at least ten years of continuous presence in the United States and permanent residents who have at least seven years of continuous presence in the United States. Under the "stop-time" rule, these periods end when the Government serves a "notice to appear" as defined by § 1229(a)(1). *See Pereira*, 138 S.Ct. at 2110.

"notice to appear" be given to noncitizens facing removal proceedings, and defines a "notice to appear" as "written notice" specifying certain information, including the "time and place at which the proceedings will be held." *Id*. The Court noted that "common sense compels the conclusion" that if the "three words 'notice to appear' mean anything . . . they must mean that, at a minimum, the Government has to provide noncitizens 'notice' of the information, *i.e.*, the 'time' and 'place,' that would enable them 'to appear' at the removal hearing." *Id*. at 2115. The parties now dispute how *Pereira* applies in contexts beyond application of the stop-time rule, namely in illegal reentry prosecutions where, as here, the underlying notice to appear provided to the noncitizen and filed with the immigration court fails to specify the time and date of the removal proceedings.

## II.     STANDARD OF REVIEW

Criminal defendants may allege defects in indictments in pretrial motions, including "(i) joining two or more offenses in the same count (duplicity); (ii) charging the same offense in more than one count (multiplicity); (iii) lack of specificity; (iv) improper joinder; and (v) failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B). An indictment must contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). *See also United States v. Daniels*, 873 F.2d 272, 274 (4th Cir. 1992) ("An indictment must contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense."). A reviewing court "should regard all well pleaded facts as true when considering a motion to dismiss an indictment." *United States v. Dove*, 70 F.Supp.2d 634, 636 (W.D. Va. 1999). A court should not dismiss an indictment on the basis of "facts that should" be "developed at trial." *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012). Rather, motions

to dismiss indictments should generally be denied unless "the allegations therein, even if true, would not state an offense." *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004).

Collateral attacks of deportation orders are authorized where, as here, those orders are necessary to establish an element of the charged illegal reentry offense.[2] *See United States v. Mendoza-Lopez*, 481 U.S. 828, 837–38 (1987) (review of deportation proceeding must be "made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense"). Under § 1326(d), a defendant mounting a collateral attack against an underlying deportation order must show (1) he "exhausted any administrative remedies that may have been available to seek relief against the order"; (2) the deportation proceedings "at which the order was issued improperly deprived" him of the "opportunity for judicial review; and (3) entry of the order was "fundamentally unfair." If a "defendant satisfies all three requirements, the illegal reentry charge must be dismissed as a matter of law." *United States v. El Shami,* 434 F.3d 659, 663 (4th Cir. 2005).

### III. ANALYSIS

Cortez advances two arguments in support of his motion to dismiss the indictment. First, he argues the indictment should be dismissed because subject matter jurisdiction never vested in the immigration court. Second, he contends the indictment should be dismissed under the factors set forth for a collateral attack on a deportation order in 8 U.S.C. § 1326(d). The Court has recently addressed these arguments in ruling on several motions to dismiss indictments in similar

---

[2] The elements of illegal reentry under 8 U.S.C. § 1326 are as follows: (1) the defendant "has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding"; and (2) the defendant thereafter "enters, attempts to enter, or is at any time found in the United States" without express advance consent from the Attorney General. 8 U.S.C. § 1326(a). The Fourth Circuit has recognized that a valid "deportation order is an element of the offense of illegal reentry." *United States v. El Shami*, 434 F.3d 659, 663 (4th Cir. 2005).

4

illegal reentry cases. *See, e.g., United States v. Saravia-Chavez*, No. 3:18-cr-00016, Dkt. 39 (denying motion to dismiss indictment); *United States v. Ramos-Delcid*, No. 3:18-cr-00020, 2018 WL 5833081 (W.D. Va. Nov. 7, 2018) (dismissing indictment under § 1326(d)). Cortez has "expressly adopt[ed] all of the arguments in those cases" for consideration here, acknowledging that his case is "indistinguishable" from two cases—*United States v. Saravia-Chavez*, 3:18-cr-00016, and *United States v. Ramirez*, 3:18-cr-00026—where the Court has recently denied identical motions to dismiss indictments. (Dkt. 25 at 1). We consider each of Cortez's arguments below.

### A. Immigration Court's Subject Matter Jurisdiction over Removal Proceeding

Cortez first argues that the indictment should be dismissed because the "immigration judge lacked subject matter jurisdiction to enter an order of removal against him." (Dkt. 25 at 1). This is so, Cortez contends, because a removal proceeding commences, and jurisdiction vests with the immigration court, only by the filing of a charging document such as a notice to appear, which *Pereira* and § 1229(a) establish must contain the time and place of the removal proceedings. (*Id.*). Cortez argues that where, as here, a notice to appear fails to include the time and date of a removal hearing, the document does not qualify as a charging document so as to confer jurisdiction over an alien to the immigration court, rendering any subsequent deportation *ultra vires* and void. (*Id.*).

This argument fails.[3] Neither *Pereira* nor 8 U.S.C. § 1229(a) control when and how subject matter jurisdiction over a removal proceeding vests in an immigration court. Rather, separate federal regulations promulgated by the Attorney General dictate when and how an

---

[3] This Court has already rejected identical jurisdictional arguments in related illegal reentry cases and continues to adhere to the rationale articulated in those decisions. *See, e.g., United States v. Ramos-Delcid*, No. 3:18-cr-00020, 2018 WL 5833081, at *3–5 (W.D. Va. Nov. 7, 2018) (rejecting defendant's identical jurisdictional argument in illegal reentry case).

immigration court gains subject matter jurisdiction.[4]  Specifically, 8 C.F.R. § 1003.14(a) states that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service."  For all proceedings "initiated after April 1, 1997," a "charging document" is defined by a separate regulation to "include a Notice to Appear."  8 C.F.R. § 1003.13.  Yet another regulation—8 C.F.R. § 1003.15(b)-(c)—lists the specific items that should be included in a notice to appear filed with the immigration court for jurisdictional purposes.  But neither § 1003.15(b) nor § 1003.15(c) list the time and date of the removal proceedings as required criteria for a notice to appear filed with the immigration court for jurisdictional purposes.  Moreover, neither § 1003.15(b) nor § 1003.15(c) cross-reference 8 U.S.C. § 1229(a)(1).

By contrast to these regulations concerning the required content of notices to appear filed with the immigration court for jurisdictional purposes, *Pereira* and 8 U.S.C. § 1229(a)(1) concern the required content of notices to appear "given . . . to the alien" either in person, by mail, or by delivery to the alien's counsel.  Section 1229(a)(1)(A)-(G) lists ten items that must be specified in notices to appear given to the alien, including "[t]he time and place at which the proceedings will be held."  8 U.S.C. § 1229(a)(1)(G)(i).  Neither § 1229(a)(1) nor *Pereira* address the immigration court's subject matter jurisdiction over the proceeding.

The Court finds that 8 C.F.R. § 1003.14 and § 1003.15—not 8 U.S.C. § 1229(a)(1) and *Pereira*'s interpretation of that statutory provision—control when and how subject matter jurisdiction vests in an immigration court.  Fourth Circuit precedent supports this conclusion.

---

[4]   Congress explicitly granted the Attorney General authority to "establish such regulations" as he "determines to be necessary for carrying out" the Immigration and Nationality Act.  8 U.S.C. § 1103(g)(2).  Pursuant to this statutory delegation, the Attorney General promulgated a comprehensive regulatory framework governing immigration court proceedings, including regulations concerning when and how subject matter jurisdiction over a removal proceeding vests in an immigration court.  *See generally* 8 C.F.R. § 1003.

*See, e.g., Sorcia v. Holder*, 643 F.3d 117, 119 n.1 (4th Cir. 2011) (citing § 1003.14(a) for proposition that jurisdiction vests upon filing of notice to appear with the immigration court); *Shogunle v. Holder*, 336 F. App'x 322, 324–25 (4th Cir. 2009) (holding jurisdiction never vested in immigration court because no notice to appear had been filed with the court per § 1003.14(a)). At least one district court has reached the same conclusion in a post-*Pereira* decision. *See United States v. Romero-Colindres*, No. 1:18-cr-00415, 2018 WL 5084877, at *2 (N.D. Oh. Oct. 18, 2018) (noting that neither the "vesting provision [of 8 C.F.R. § 1003.14(a)] nor the definition of charging document under section 1003.13 expressly require that an NTA meet the statutory requirements of 8 U.S.C. § 1229(a)(1)").

Here, Cortez makes no argument that the notice to appear filed with the immigration court is deficient under 8 C.F.R. § 1003.15. Accordingly, the Court declines to dismiss the indictment on jurisdictional grounds.

### B. Cortez's Collateral Attack Under 8 U.S.C. § 1326(d)

Cortez also advances a collateral attack on his deportation order pursuant to 8 U.S.C. § 1326(d), which permits an alien to "challenge the validity" of the deportation order underlying an illegal reentry prosecution if the alien can demonstrate that: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." If an alien "satisfies all three requirements, the illegal reentry charge must be dismissed as a matter of law." *United States v. El Shami,* 434 F.3d 659, 663 (4th Cir. 2005).

Unlike in the subject matter jurisdiction inquiry addressed above, *Pereira* and the content requirements for notices to appear issued to aliens listed in 8 U.S.C. § 1229(a)(1) have bite in the

§ 1326(d) inquiry. The notice to appear issued to Cortez failed to list the time and date of the removal proceedings. (Dkt. 25-2). This defect renders this notice to appear deficient under *Pereira* and the plain text of § 1229(a)(1). *See* 8 U.S.C. § 1229(a)(1)(G)(i) (specifying that notices to appear issued to aliens must include the "time and place at which the proceedings will be held"); *Pereira*, 138 S.Ct. at 2113–114 ("A putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear' under section 1229(a) . . ."). The only question, then, is whether this defect in the notice to appear, and its attendant practical consequences, are sufficient for Cortez to challenge the deportation order issued against him under 8 U.S.C. § 1326(d). The Court concludes that Cortez cannot successfully attack the validity of his deportation order under § 1326(d).

The Court finds it unnecessary to consider whether Cortez is excused from showing exhaustion of administrative remedies and deprivation of judicial review because, even assuming that Cortez satisfies these first two prongs in the § 1326(d) inquiry, Cortez cannot show that his deportation proceedings were fundamentally unfair.[5] To demonstrate fundamental unfairness under § 1326(d), an alien must show that "(1) his due process rights were violated by defects in

---

[5] The Court notes, however, that the copy of the deportation order Cortez provided, (dkt. 25-2), indicates that Cortez waived his right to appeal the order. Cortez nowhere argues that this waiver was unknowing or involuntary. A knowing and voluntary waiver of the right to appeal a removal order generally constitutes a failure to exhaust administrative remedies. *United States v. Lopez*, 667 F. App'x 837, 838 (4th Cir. 2016) ("If . . . an alien knowingly and voluntarily waives his right to appeal an order of deportation, then his failure to exhaust administrative remedies will bar collateral attack on the order in a subsequent illegal reentry prosecution under § 1326(d)." (quoting *United States v. Cerna*, 603 F.3d 32, 38 (2d Cir. 2010))). Moreover, the Court notes that this is not a case where immigration officials' "failure to provide notice precluded [the defendant] from attending his deportation hearing in the first instance." *El Shami*, 434 F.3d at 664. In such cases, the Fourth Circuit has held that a defendant is not genuinely "apprised of his right to seek . . . administrative and judicial review," and thus "satisfies the first two requirements for a collateral attack under § 1326(d)." *Id*. Here, Cortez concedes that he "appeared via video conference at his deportation hearing," a fact also supported by documentation on the deportation order itself. (Dkt. 25 at 1; Dkt. 25-1).

his underlying deportation proceeding; and (2) he suffered prejudice as a result of the defects." *El Shami*, 434 F.3d at 665. An alien's "fundamental" right of due process includes "the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 664–65 (quoting *United States v. Torres*, 383 F.3d 92 (3d Cir. 2004)). "[D]ue process requires an alien who faces [removal] be provided (1) notice of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard." *Id*. at 665. To demonstrate prejudice, the alien must show that "but for the errors complained of, there was a reasonable probability that he would not have been deported." *Id*. *See also United States v. Lopez-Collazo*, 824 F.3d 453, 462 (4th Cir. 2016) (noting that "the defect in the removal proceedings" identified by the district court "must be linked" to the "resulting prejudice" for a district court to find fundamental unfairness).

The Court finds that immigration officials' failure to list the time and date of the deportation proceedings on the notice to appear, (dkt. 25-2), did not violate Cortez's due process rights. This is so because the defects in the notice to appear Cortez received ultimately did not deprive Cortez of "the opportunity to be heard at a meaningful time and in a meaningful manner." *El Shami*, 434 F.3d at 664–65. Despite the deficiencies in the initial notice to appear, Cortez concedes that he "appeared via video conference at his deportation hearing." (Dkt. 25 at 1). Cortez makes no argument that he was not provided a "fair opportunity to be heard" by the immigration judge at this hearing. *El Shami*, 434 F.3d at 664–65. Accordingly, the deficiencies in the notice to appear ultimately do not rise to the level of a due process violation.

However, even assuming that these deficiencies violated Cortez's due process rights, Cortez cannot show that the alleged due process violation resulted in actual prejudice. Apart from the jurisdictional arguments this Court has already rejected in this and other cases, Cortez

9

presents no substantive argument that "but for the errors complained of, there was a reasonable probability that he would not have been deported." *El Shami*, 434 F.3d at 665. Accordingly, Cortez has failed to make the necessary showing for a finding of fundamental unfairness, and the Court concludes that Cortez is therefore precluded from collaterally attacking his deportation order under § 1326(d).

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Cortez's motion to dismiss the indictment. (Dkt. 25). An appropriate order will issue, and the Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion to all counsel of record.

Entered this  15th  day of November, 2018.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE